## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Christopher Palermo


      v.                                    Civil No. 08-cv-109-JL


Suzanne Collins, Superintendent,
Coos County Department of
Corrections, et al.


## REPORT AND RECOMMENDATION


     Before the Court is Christopher Palermo's complaint
(document nos. 1, 3, 6 & 9),[1] filed pursuant to 42 U.S.C. § 1983.
Palermo brings this action against Suzanne Collins,
Superintendent of the Coos County House of Corrections ("CCHC"),
and other CCHC employees,[2] alleging that the defendants have
violated his federal constitutional rights during his
incarceration.  The complaint is before me for preliminary review

---

[1]On March 21, 2008, Palermo filed his complaint in this
matter (document no. 1).  On May 12, 2008, Palermo filed an
"additional complaint" (document no. 3).  On May 21, 2008,
Palermo filed another "additional complaint" (document no. 6).
ON August 4, 2008, he filed an untitled addendum (document no.
9).  I construe the latter three filings as addenda to the
original complaint, and will consider the four documents, in the
aggregate, to be the complaint in this matter.

[2]In addition to Collins, Palermo names CCHC Nurse Sherill
Eastman and CCHC Dr. Robe Soucy as defendants to this action.

to determine whether, among other things, it states any claim upon which relief might be granted. <u>See</u> 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. <u>Id</u>. In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. <u>See</u> <u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).

All of the factual assertions made by a pro se plaintiff and
inferences reasonably drawn therefrom must be accepted as true.
See <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating
the "failure to state a claim" standard of review and explaining
that all "well-pleaded factual averments," not bald assertions,
must be accepted as true."  This review ensures that pro se
pleadings are given fair and meaningful consideration.

<u>Background</u>

1.   <u>Facts Relating to Conditions of Confinement at the CCHC</u>

Palermo alleges that the CCHC administration has covered all
of the external windows in the pretrial housing side of the jail.
As a result, the unit gets no natural light, which creates undue
psychological stress.  Palermo further alleges that the CCHC is
overcrowded and that the overcrowding creates a firehazard.

2.   <u>Facts Relating to the CCHC Canteen</u>

Palermo claims that the CCHC is supposed to use money from
inmate canteen purchases to purchase items for the benefit of the
inmates, such as recreation items, books, and religious items.
Instead, the CCHC is keeping the money to use in supporting the
jail operations.  Further, Palermo claims that the CCHC is

improperly reselling bulk items that are not labelled for individual sale.

3.   <u>Facts Relating to Retaliation</u>

On November 6, 2007, Palermo alleges that he was transferred from the CCHC, where he was being detained pretrial on charges that occurred in Coos County, to the New Hampshire State Prison. Palermo claims that Collins transferred him in response to Palermo's threat to take legal action against the CCHC for violations of his right to humane conditions of confinement. Palermo claims that, in further retaliation, Collins moved him to the Belknap County House of Corrections for three weeks in late January of 2008, followed by short-term transfers to the Rockingham County House of Corrections and the Merrimack County House of Corrections.  These frequent transfers made it difficult for Palermo's family to visit him, and difficult to meet with his attorneys to prepare for his criminal trial, as his attorneys were never sure of where Palermo was being held.

4.   <u>Facts Relating to Grievance Procedures</u>

On April 23, 2008, Palermo, who was apparently back at the CCHC at that time, filed a grievance with the CCHC complaining that the jail was overcrowded and that jail conditions created a

fire hazard.  Collins responded to Palermo that his complaints were not redressable through the grievance process, and he would have to seek relief by filing a lawsuit.  On May 2, 2008, Palermo filed a grievance complaining about Collins's repeated attempts to circumvent Palermo's right to seek relief through the grievance process.  No action was taken on this grievance except that Collins again told Palermo he would have to seek relief in the courts.

5.   <u>Facts Relating to Medical Care</u>

On May 15, 2008, Palermo reported a painful blood blister on his upper left thigh to CCHC Officer Trafell.  Trafell brought Palermo to CCHC nurse Sherill Eastman.[3]  Eastman gave Palermo a three inch hollow needle, rubbing alcohol, hydrogen peroxide, two rubber gloves, and a roll of toilet paper.  Eastman then placed Palermo in a dirty holding cell on a dirty and unsanitary mattress, and told him "Pop it yourself.  I don't want nothing to do with it."  Eastman left Palermo, with a corrections officer and no medical training, to pop his own blood blister.  Palermo

---

[3]Palermo does not name Eastman in the narrative of the complaint, but has named "Sherill Eastman" as a defendant to this action.  I presume that Eastman is the nurse referred to who allegedly required Palermo to treat his own blood blister, as that is the only nurse against whom Palermo brings suit.

attempted to drain his own blister for fifteen minutes by repeatedly sticking himself with the needle.  He was then returned to his living area.

At 9:00 p.m. the same evening, Palermo returned to the nurse's station, as the blister had gotten larger and become more painful.  The area surrounding the blister had also become bright red and sore.  Palermo was again sent to a dirty cell with medical supplies and told to pop the blister himself.

By the next day, May 16, the blister had become infected and so painful that Palermo was unable to walk.  Another nurse examined Palermo and then called the doctor.  She also covered and dressed the blister and said to leave it alone, and that it was improper for the other nurse to have had Palermo attempt a medical procedure on himself.  That night, a third nurse applied ointment to the wound and dressed it.  She told Palermo to return the following day to receive an antibiotic medication the doctor had ordered for him.

On May 17, at the noon medical call, Palermo attempted to go to the nurse's station to get his medication and have his dressing changed.  Two corrections officers, Officer Blias and

Corporal Gagnon, refused to let him go and refused to allow him to receive any medical care other than a band–aid.[4]

On May 20, Palermo was examined by CCHC physician Robe Soucey.  Dr. Soucey told Palermo that the area around the blister had become so infected that the infection had to be remedied surgically.  Dr. Soucey then made arrangements for Palermo to be transported to the hospital for the procedure.

On May 27, Palermo was transported to the hospital where Dr. Soucey performed surgery.  Dr. Soucey removed a portion of tissue that left a wound in Palermo's leg 2 inches wide and three inches deep.  The wound was closed with five surface stitches and no internal stitches.  Palermo was then returned to the CCHC.

On June 7, 2008, Palermo went to the CCHC nurse and advised her that his stitches were hurting him.  The nurse examined Palermo and said that the stitches had been left in for several days longer than they should have been, and had thus become imbedded in the skin.  On June 8, 2008, the stitches were removed by the CCHC nurse on duty pursuant to Dr. Soucey's orders.

---

[4]Palermo has not alleged any claims against Blias and Gagnon.  If he intends to do so, he must properly move to amend his complaint.

On June 9, Palermo was being returned to the CCHC from court when the wound on his leg reopened, soaking his boxer shorts in blood and causing Palermo to experience a great deal of pain. Upon his arrival at the CCHC, Palermo was seen by a nurse who, on Dr. Soucey's orders, did not restitch the wound, but packed it and covered it.  The nurse on duty advised Palermo that she was surprised that no internal stitches had been used, as a wound of that size would ordinarily warrant the use of internal dissolvable stitches.  The nurse also told Palermo that such internal stitches would have prevented the reopening of the wound.

Palermo alleges that, as a result of the lack of treatment for his blister, the infection resulting from being made to pop the blister himself, and the inadequate surgical and post-surgical care he received, he has been permanently disfigured as he has a large "hole" in his leg near his groin.  Further, he states that he is in constant pain since the wound reopened, which makes it difficult for him to walk, sit, stand or sleep.

<u>Discussion</u>[5]

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  <u>See</u> 42 U.S.C. § 1983;[6] <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by</u> <u>Daniels v.</u> <u>Williams</u>, 474 U.S. 327, 330–331 (1986)); <u>Wilson v. Town of</u> <u>Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v.</u> <u>Flores</u>, 103 F.3d 1056, 1061–62 (1st Cir. 1997).  Because

---

[5]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Palermo disagrees with this identification of the claims, he must do so by objecting to this Report and Recommendation or properly moving to amend his complaint.

[6]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Palermo's claims allege violations of federal constitutional law by state actors, his suit arises under § 1983.

## II.   Pretrial Detainee Status

Palermo was a pretrial detainee at the CCHC at the time the events he describes occurred.  Detainees have a constitutional right under the due process clause of the Fourteenth Amendment to be free of punishment.  See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)).  However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15. Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

III. <u>Conditions of Confinement Claims</u>

    A.   <u>Overcrowding</u>

    Palermo alleges that the overcrowding and deprivation of natural light at the CCHC constitute punishment and, therefore, violate his due process rights.  The Supreme Court has found that simple overcrowding of a correctional facility does not, in and of itself, constitute unconstitutional punishment.  <u>See</u> <u>Lyons v. Powell</u>, 838 F.2d 28, 30 (1st Cir. 1988) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 541 (1979) for the proposition that "double-bunking" or placing two inmates in a cell intended for one inmate does not constitute punishment).  I recommend that the overcrowding claim, therefore, be dismissed.

    B.   <u>Inadequate Natural Light</u>

    While courts have held that the constitutional requirement that an inmate be provided with adequate shelter includes the provision of adequate lighting, <u>see</u> <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 783 (9th Cir. 1985), I can find no legal authority for the proposition that light must be natural light to be considered constitutionally adequate.  Palermo baldly alleges that the denial of natural light will cause "undue psychological stress." Palermo has not, however, alleged that he has suffered any

physical injury or damage as a result of being deprived of natural light.  Prisoners cannot recover damages for mental or emotional injury in the absence of physical injury.  42 U.S.C. § 1997d(d).  Palermo has failed to state a claim for unconstitutional conditions of confinement upon which relief might be granted for inadequate natural light, and I recommend that this claim be dismissed.

IV.   Retaliation Claim

Palermo seeks injunctive relief and monetary damages for Collins' alleged retaliatory decisions to transfer him to numerous county jails rather than keeping him at the CCHC.  It appears that Palermo is currently housed at the CCHC, and has been for at least the last several months.  Accordingly, rather than address the necessity of injunctive relief in the context of alleged retaliatory transfers, I recommend that the claim for injunctive relief be dismissed as it is currently moot.  The dismissal, if this recommendation is approved, will be without prejudice to refiling the request for an injunction should circumstances warrant.

Palermo also alleges that he is entitled to damages for the retaliatory transfers.  A prisoner has no right to be housed in

any particular institution.  <u>Montanye v. Haymes</u>, 427 U.S. 236
(1976).  Therefore, a prisoner may be transferred without a
hearing, and without being provided with a reason.  <u>McDonald v.
Hall</u>, 618 F.2d 16, 18 (1st Cir. 1979).  However, while CCHC
officials could transfer Palermo between correctional facilities
without infringing any interest protected by the constitution,
they may not do so to punish Palermo for engaging in conduct
protected by the First Amendment.  <u>McDonald</u>, 610 F.2d at 18; <u>see
also</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3rd Cir. 2003);
<u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n
otherwise legitimate and constitutional government act can become
unconstitutional when an individual demonstrates that it was
taken in retaliation for his exercise of First Amendment
speech."); <u>Oropallo v. Parrish</u>, No. 93-1953, at *3, 1994 WL
168519 (D.N.H. May 5, 1994), <u>aff'd</u>, 23 F.3d 394 (1st Cir. 1994)
(Conduct on the part of prison officials that is "not otherwise
constitutionally deficient is actionable under § 1983 if done in
retaliation for the exercise of constitutionally protected first
amendment freedoms.").

A retaliatory transfer claim has three elements: (1) the
plaintiff was engaged in protected conduct; (2) the defendants

took an adverse action against the plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct; and (3) that there is a causal connection between the adverse action and the protected conduct.  Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999); Soto v. Iacavino, No. 01 Civ. 5850 (JSM), 2003 WL 21281762 at *2 (S.D.N.Y. June 4, 2003).

As to the first element, Palermo contends that he was engaged in protected First Amendment speech by advising Collins of his intention to file a civil rights lawsuit complaining about conditions at the CCHC.  The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  In the prison context, this right means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers." Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc).  Because the First Amendment protects an individual's freedom of speech in both oral and written form, see U.S. Const. amend. I; Palmigiano v. Travisono, 317 F. Supp. 776, 786 (D.R.I. 1970), I find that

expressing an intent to file a lawsuit complaining about prison conditions is speech protected by the First Amendment. Accordingly, Palermo was exercising a legitimate First Amendment right when he threatened to sue the CCHC to redress allegedly inhumane prison conditions.

As to the second element of a retaliation claim, Palermo alleges that adverse action was taken against him by CCHC officials in the form of transfers to distant jails that made family and attorney visits burdensome or impossible.  Such an assertion alleges an adverse action by the CCHC.

Finally, Palermo must ultimately demonstrate that there is a causal connection between the transfers and Palermo's exercise of his First Amendment rights.  Although I find that Palermo has not yet provided significant factual details to prove that element of a retaliation claim, for purposes of preliminary review, I find that Palermo has alleged the minimum facts necessary for me to draw the inference that the transfers were made in response to Palermo's threats to sue.  Accordingly, in an Order issued simultaneously with this Report and Recommendation, I will direct that the retaliatory transfer claim be served on defendant Collins.

V.    Inadequate Grievance Procedures Claim

Prisoners have the constitutional right to petition the Government for redress of their grievances.  Hudson v. Palmer, 468 U.S. 517, 523 (1984).  That right includes the right to access to established prison grievance procedures.  See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Franco v. Kelly, 854 F.2d 584, 589–90 (2d Cir. 1988).  Palermo has not alleged, however, that defendants have failed to afford him redress under established grievance procedures.  Instead, he has alleged that he was advised by Collins that there are simply no established grievance procedures available to redress his complaints.

There is no constitutional or statutory entitlement to the existence of grievance procedures.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Lim v. Stanley, 2005 WL 1712202, *4 n.13. (D.N.H. 2005).  The failure to provide such procedures, therefore, will not ordinarily constitute a deprivation of a constitutional right so long as alternative means, such as a lawsuit, are open to an inmate to present his grievances.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Lim, 2005 WL 1712202 at *4, n.13.  Accordingly, as Palermo has not alleged the violation of a cognizable constitutional right, I recommend that

16

the inadequate grievance procedures claim be dismissed from this action.

VI.   <u>Inadequate Medical Care Claim</u>

To state a cause of action under § 1983 premised on inadequate medical care, a plaintiff must allege facts which demonstrate that the defendant or defendants acted with deliberate indifference to the prisoner's serious medical needs. <u>Estelle</u>, 429 U.S. at 106; <u>Bean v. Cunningham</u>, 650 F. Supp. 709, 713 (D.N.H. 1986).  Deliberate indifference may be manifested by prison medical personnel in their response to prisoners' needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Estelle</u>, 429 U.S. at 104-05.  As to the second essential element, "[a] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Gaudrealt v. Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990).

Palermo alleges here that he had a painful blood blister which later resulted in a serious infection requiring surgery. Because a blood blister, which may or may not be serious at its

inception, if not properly treated can quickly progress to a
serious condition, I find that it constitutes a serious medical
condition for purposes of requiring the attention of prison
medical personnel.  Palermo alleges that Eastman denied him
proper medical care by simply handing him medical supplies and
telling him to pop and drain his blister himself, and then
placing him in unsanitary conditions to do so.  Palermo alleges
that his surgical wound was improperly stitched by Dr. Soucey,
resulting in pain, bleeding, and permanent damage to Palermo's
leg.  These claims are sufficient to state a cause of action
against defendants Eastman and Soucey for the denial of adequate
medical care.  In the Order issued simultaneously with this
Report and Recommendation, I will direct service of the
inadequate medical care claim against these defendants.

VII. <u>Canteen Claims</u>

    A.   <u>Canteen Proceeds</u>

    Palermo asserts a cause of action based on the alleged
funneling of canteen purchase proceeds from a fund to benefit
inmates to the general operating fund of the CCHC.  Except for
asserting that such funds are supposed to be directed to items
that directly benefit the inmates, such as recreation items,

18

books, and religious items, Palermo does not state what gave rise
to the requirement that the canteen proceeds be applied in a
particular manner.  Even assuming that such a misappropriation of
inmate funds existed, and that Palermo, as an inmate, was damaged
by that misappropriation, Palermo fails to state a constitutional
due process claim.  Palermo's interest in the proceeds, or items
derived therefrom, is a property interest.  Claims alleging the
theft, damage, loss or other misappropriation of property are not
actionable under 42 U.S.C. § 1983 where, as here, there is an
adequate post-deprivation state remedy available.  <u>Hudson</u>, 468
U.S. at 533; <u>see</u> N.H. Rev. Stat. Ann. 541-B:9(II) & (IV), and
541-B:14 (1997) (providing a post-deprivation means of recouping
property loss attributable the state).  Therefore, I recommend
that this claim be dismissed from this action.

     B.   <u>Sale of Bulk Items</u>

Palermo alleges that the CCHC canteen sells items that are
"not labeled for individual sale."  It is entirely unclear what
cause of action Palermo seeks to raise by this complaint.
Because I cannot find that Palermo has a federal constitutional
right to canteen items labeled for individual sale, I recommend
that this claim be dismissed.

<u>Conclusion</u>

For the foregoing reasons, I will direct, in an Order issued simultaneously with this Report and Recommendation, that the retaliatory transfer claim proceed against defendant Collins and the inadequate medical care claims proceed against defendants Eastman and Soucey.  I recommend the dismissal of all of the other claims in this action.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia–Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).


<u>/s/Justo Arenas</u>
Justo Arenas
United States Magistrate Judge

Date:      August  14, 2008

cc:        Christopher Palermo, pro se