UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Christopher Palermo</u>

    v.                                        Civil No. 08-cv-109-JL

<u>Robert Soucy</u>

**O R D E R**

In this prisoner civil rights action, Christopher Palermo, proceeding pro se, sued the Coos County House of Corrections, its superintendent, and a doctor and nurse who practice at the facility, alleging a number of constitutional violations that occurred during one of his stints as a pretrial detainee there. <u>See</u> 42 U.S.C. § 1983. Following initial review, <u>see</u> 28 U.S.C. § 1915A; L.R. 4.3(d)(2), the magistrate judge recommended dismissal of the action except insofar as it alleged a claim against the superintendent for retaliatory transfers to other facilities, and a claim against the doctor and nurse for deliberate indifference to Palermo's serious medical needs in their treatment of a blood blister that became infected and ultimately required surgery.

This court has jurisdiction under 28 U.S.C. § 1331 (federal question) because, as the magistrate judge recognized, deliberate indifference to the serious medical needs of a pretrial detainee

amounts to a violation of the Fourteenth Amendment.  See Mahan v. Plymouth County House of Corrs., 64 F.3d 14, 17 (1st Cir. 1995).

Palermo has since voluntarily dismissed his claims against the superintendent and the nurse.  The sole remaining defendant, Dr. Robert Soucy, has moved for summary judgment on the claim against him.  See Fed. R. Civ. P. 56.  Palermo has not responded to the motion.  As explained below, the motion is granted due to the complete lack of evidence that Dr. Soucy was deliberately indifferent to Palermo's serious medical needs.

Though Palermo has not filed any response to Soucy's motion, that does not affect the standard of review:  the court still "must assure itself that the moving party's submission shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'" in order to grant summary judgment.  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).  But it does mean, under this court's Local Rules, that "[a]ll properly supported material facts in the moving party's factual statement shall be deemed admitted," since they were not "properly opposed by the adverse party."  L.R. 7.2(b)(2).  While those facts are set forth below, the court has also taken note of the allegations of Palermo's complaint, as construed by the magistrate judge in his report and recommendation.

At one point during Palermo's stay at the Coos County House of Corrections, he went to the defendant nurse complaining of a blood blister on his thigh.[1]  The nurse told him, he alleges, "Pop it yourself.  I don't want nothing to do with it."  To this end, she provided him with a needle, rubbing alcohol, hydrogen peroxide, rubber gloves, and a roll of toilet paper, and left him in a holding cell under the watch of a corrections officer.  After attempting to lance the blister by sticking himself with the needle for fifteen minutes, Palermo was returned to his own cell.  This occurred without any consultation by Dr. Soucy, who maintains, as one would hope, that "he would have advised against giving an inmate a sharp instrument" for this purpose, due to the risk of infection (among other reasons, presumably).

The next day, the resulting wound on Palermo's thigh was "hot and tender to the touch," so Dr. Soucy ordered antibiotics.  Though the infection soon disappeared, a "lump" remained; Dr. Soucy, with Palermo's consent, later excised the lump in a procedure performed outside the jail, at a hospital.  The procedure required a small incision, about 2.5 centimeters long, which Dr. Soucy closed with 5 sutures.

---

[1] Though Dr. Soucy explains that Palermo was actually suffering from an ingrown hair, the court has simply accepted Palermo's account that he had a blood blister, because it makes no difference to the outcome here.

After the surgical wound showed no signs of infection for two days, Dr. Soucy informed Palermo that the stitches would be removed the following week.  Palermo, though, insisted that Dr. Soucy wait several additional days, until after a scheduled court appearance that Palermo believed would result in his release from jail.  But things did not turn out that way.

After the hearing, Palermo was not released, but returned to the Coos County House of Corrections.  During the trip, the wound reopened, "soaking his boxer shorts in blood and causing [him] to experience a great deal of pain."  Palermo received treatment from a nurse at the jail, who, he alleges, told him "she was surprised that no internal stitches had been used" on "a wound of that size," and that "internal stitches would have prevented the reopening."[2]  On Dr. Soucy's orders, the nurse simply dressed the wound--no additional suturing was ordered--which healed fully within a few weeks.  Palermo alleges, though, that "he is in constant pain since the wound reopened, which makes it difficult for him to walk, stand, or sleep," and that "he has been permanently disfigured as he has a large 'hole' in his leg near his groin" from the wound.

---

[2] Palermo also alleges that a prison nurse told him, on the day before the wound reopened, that "the stitches had been left in for several days longer than they should have been."

"For medical treatment in prison to offend the Constitution, the care must involve acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs . . . . Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007). There is simply no evidence that Palermo's treatment by Dr. Soucy--as opposed to his treatment by the nurse who, without Dr. Soucy's knowledge or authorization, instructed Palermo to attempt to lance the blister with a needle provided for that purpose--even rose to the level of negligence, let alone deliberate indifference. Dr. Soucy promptly, and successfully, treated the infection that resulted from Palermo's attempt at self-surgery. He also successfully removed the cyst that remained, at a time of Palermo's choosing. The only complication that eventually arose was when the stitches reopened. But there is no evidence to suggest that occurred because of any omission, let alone deliberate indifference, on the part of Dr. Soucy.

The result is the same even if the allegations of Palermo's complaint are accepted as competent proof, notwithstanding Rule 56(c) of the Federal Rules of Civil Procedure and Rule 501 of the Federal Rules of Evidence, which qualifies Palermo's account of

the nurses' statements about the stitches as inadmissible hearsay. At most, the nurses' alleged criticism of how long the stitches were left in, or which kinds of stitches were used, establishes a disagreement with "the course of treatment Dr. [Soucy] provided, which . . . is insufficient to show deliberate indifference." Ruiz-Rosa, 485 F.3d at 156. So the complaint arguably does not even state a claim against Dr. Soucy for deliberate indifference to Palermo's serious medical needs but, that shortcoming aside, Palermo unquestionably cannot provide any evidence to support such a claim.

Dr. Soucy's motion for summary judgment is therefore GRANTED.[3] The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 15, 2009

cc: Christopher Palermo, pro se
    Jonathan A. Lax, Esq.

---

[3]document no. 43.